UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| USCOC OF GREATER MISSOURI, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07-CV-1489 (JCH) |
| ) | |
| CITY OF FERGUSON, MISSOURI, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

The matter is before the Court on Plaintiff USCOC of Greater Missouri, LLC's Motion for Partial Summary Judgment (Doc. No. 5), filed September 21, 2007. The matter is fully briefed and ready for a decision.

## BACKGROUND

By way of background, Plaintiff is a wireless telecommunication service provider holding a Federal Communications Commission license to provide wireless telecommunication services within certain market areas. (Pl.'s Statement of Undisputed Material Facts ("Pl.'s Facts"), Doc. No. 7 at ¶ 1). Defendant City of Ferguson ("Ferguson") is a political subdivision within the state of Missouri. (Id. at ¶ 2).

In 2006, Plaintiff and Fresno Ranch Management Co., Inc. ("Fresno") entered into a lease for a portion of Fresno's parcel of land located at 914 Airport Road, Ferguson, Missouri ("Property"). (Id. at ¶¶ 4, 8). Plaintiff intended to install a 105-foot wireless communication tower ("Tower") on the Property. (Id. at ¶ 8).

The Ferguson, Missouri Zoning Code ("City Code") allows telecommunication towers as a special use, but requires that the builder obtain a special use permit before installing a tower. City Code §§ 23.0, 23.7.[1] The City Code states that when considering a special use permit application:

> 23.4 . . . [I]t shall be the duty of the Commission and the Council to give consideration to the effect of the requested use on the health, safety, morals and general welfare of the residents of the area in the vicinity of the property in question and the residents of the city generally. In considering the special use, the Commission and the Council should consider the following:
>
> 23.41 The compatibility with surrounding uses and compatibility with the surrounding neighborhood.
>
> 23.42 The comparative size, floor area and mass of the proposed structure in relationship to adjacent structures and buildings in the surrounding properties and neighborhood. . . .
>
> 23.47.1 The general appearance of the neighborhood will not be adversely affected by the location of the proposed use on the parcel, nor will the materials used in the construction of the proposed buildings of the special use be greatly dissimilar, or that the general architecture of the building standing out or create a visual problem with the neighborhood. . . .
>
> 23.47.3 The impact of landscaping of the proposed use in terms of maintained landscaped areas versus areas to remain in a natural state, openness of landscape versus the use of buffers and screens.

Id. at §§ 23.4- 23.47.3. Additionally, the City Code requires telecommunication towers to meet additional criteria, such as the following:

> 1. A communication tower shall not exceed 150 feet in height.
>
> 2. The communication tower shall be set back from the property line a minimum of one (1) foot for every foot of structure height. No communication tower shall be located within 200 feet of any residential structure. . . .
>
> 4. Prior to approval of a communication tower by the City Council, the applicant shall document its efforts to locate the proposed antenna on an existing communication tower within the city or in close proximity to the City. Such documentation shall also indicate why co-location on any existing tower is not feasible.

---

[1]See Mot. for Partial Sum. J., Doc. No. 5 at Ex. 2, 12.

> 12. Prior to approval of a communication tower by the City Council, the applicant shall document its efforts to locate the communication tower on publicly owned land including but not limited to federal, state, county, municipal, school district, library district, and fire district land.

(Id. at § 23.7).

On November 14, 2006, Plaintiff contacted Defendant about filing an application for a special use permit ("SUP Application") to construct the Tower. (Mot. for Partial Sum. J., Doc. No. 5 at Ex. 3). On December 15, 2006, Plaintiff and Defendant met to discuss the Tower. (Id. at Ex. 3 pp. 3-4). At this meeting, Defendant informed Plaintiff of potential problems with its SUP Application. (Id.). Although Plaintiff's proposal violated the setback requirements, Plaintiff informed Defendant on April 4, 2007 that it would seek approval of its SUP Application and then would seek a variance to remedy the setback violations. (Id.). On April 9, 2007, Plaintiff formally filed its SUP Application. (Id. at Ex. 5).

On June 20, 2007, Defendant's Planning and Zoning Commission ("Commission") considered the SUP Application and recommended that the Ferguson City Council ("Council") deny it. (Id.). The Commission concluded that the Tower would not meet the setback requirements listed in City Code §§ 23.7(1)-(2),[2] would not blend in with the one story buildings surrounding it, and did not have any landscaping. (Id. at pp. 7-8). Additionally, the Commission noted that Plaintiff had not suggested any alternative sites and had not explained why the other locations would not work. (Id. at p. 8). On July 24, 2007, the Council, after holding a public hearing and considering the Commission's report, voted

---

[2]According to the City Code, a tower must be setback from the property line "a minimum of one (1) foot for every feet of structure height." City Code § 23.7(1). Here, the Tower was 105 feet tall, meaning that the Code required a 105 setback for the property line. The Tower, however, was to be located only thirty-one (31) feet from the north property line, twenty-three (23) feet from the east property line, sixty-eight (68) feet from the south property line, and "over 100 feet" from the west property line. (Pl.'s Facts at Ex. 5 p. 5). Additionally, the Tower's plans show that it would be within 200 feet of a residential structure, in violation of City Code § 23.7(2). (Id. at p. 8).

to deny the SUP Application. (Id. at Ex. 7). The Council provided its reasons for the denial by issuing Resolution 2007-30 that read, in pertinent part:

> *Whereas*, the location of the telecommunication tower and related equipment facilities is in direct violation of City Ordinance; for instance, the proposed tower does not meet the minimum required setback of two hundred (200) feet from any adjoining residential structure, nor the minimum setbacks required from the property line for its height and the fence enclosure extends into the front yard setback; and
>
> *Whereas*, under State Law, the City Council has no discretion to approve a proposed plan and application for a special use permit which violates City Ordinance; . . .
>
> **Whereas**, the Planning and Zoning Commission has recommended denial of the application for special use permit; and
>
> **Whereas**, because of the obvious violations of City Ordinance inherent in this application and accompanying plan, the City Council need not address whether the application and accompanying plan meet other ordinance requirements for a special use permit. . . .
>
> The Application for a Special Use Permit for a telecommunication tower and related equipment facilities for 914 April Road is hereby denied for the reason that the plan is in violation of City Ordinances.

(Id. at Ex. 10).

On July 19, 2007, Plaintiff filed an application with the Ferguson Board of Adjustment ("Board") for an area variance ("Variance Application"). (Id. at Ex. 7). The City Code does not require the Board to meet a regular times; rather, it requires the Board to "fix a reasonable time for the hearing of the appeal . . . and decide the same within a reasonable time." (Id. at Ex. 12 p. 2). Missouri law requires that the Board shall be comprised of five members and that four members are necessary to approve any variance. Mo. Rev. Stat. § 89.080. The City Code requires the Mayor to appoint, and the Council to approve, the five board members and three alternates. City Code §§ 25.21, .26. Each member and alternate must be a Ferguson, Missouri resident. Id. From June 2007 until November 13, 2007, the Board only had three members because the Mayor and Council could not find any Ferguson residents willing to fill the fourth and fifth seats. (Def.'s Statement of

Additional Undisputed Facts, Doc. No. 28 at ¶¶ 5-7). On November 13, 2007, the Mayor and Council appointed a resident to fill one of the available seats. (Id. at ¶ 7). The Board has scheduled a meeting and will hear Plaintiff's Variance Application on November 28, 2007. (Id. at ¶ 16).[3]

On August 27, 2007, Plaintiff filed this suit alleging that Defendant's denial of its SUP Application and Variance Application violated the Federal Telecommunications Act of 1996 ("TCA"), the United States Constitution, and Missouri Law. (Compl., Doc. No. 1). Count I alleges that Defendant violated 47 U.S.C. § 332(c)(7)(B)(iii) because the Sup Application's denial and the Variance Application's denial were neither "in writing" nor "supported by substantial evidence." On September 21, 2007, Plaintiff filed its motion for summary judgment on Count I of the Complaint. (Mot. for Partial Sum. J., Doc. No. 5).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not

---

[3]The Court notes that Defendant is holding the meeting at the first available date. See Mo. Rev. Stat. § 89.080 (requiring the Board to provide the public with fifteen days notice).

the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

**DISCUSSION**

Congress enacted the TCA in order "to foster competition among telecommunication providers, to improve the quality of their services, and to encourage the rollout of technologies without delay." USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment of Des Moines, 465 F.3d 817, 820 (8th Cir. 2006). Congress intended the TCA as "a deliberate compromise between two competing aims-to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." Town of Amherst v. Omnipoint Communications Enters., 173 F.3d 9, 13 (1st Cir. 1999). One method that Congress employed to accomplish these goals was the "reduction of the impediments imposed by local governments upon the installation of facilities for wireless communication, such as antenna towers." City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 115 (2005). Subject to some limitations, Congress preserved the authority of local governments "over decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A).

Plaintiff's summary judgment motion implicates three of these limitations. First, the TCA provides that a local government "shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly

filed with such government or instrumentality, taking into account the nature and scope of the request." Id. at § 332(c)(7)(B)(ii). Secondly, the TCA requires that any decision denying permission to construct a tower "shall be in writing and supported by substantial evidence contained in the written record." Id. at § 332(c)(7)(B)(iii). Finally, the TCA allows a party that has been "adversely affected by any final action or failure to act" of a local government to commence a suit against the local government within thirty days of the "action or failure to act." Id. at § 332(c)(7)(B)(v). The Court must "hear and decide such action on an expedited basis." Id. When read together, § 332(c)(7)(B)(iii) and § 332(c)(7)(B)(v) allow a party to file suit when the local government fails to act in a reasonable time on a request to build a telecommunication tower. Nextel Partners v. Kingston Township, 286 F.3d 687, 692 (3d Cir. 2002) (Alito, J.).

I.  **Count VIII**

The Court raises sua sponte the issue of whether Count VIII should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. See Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir. 1991)(holding that a district court may sua sponte dismiss a complaint under Fed. R. Civ. P. 12(b)(6) so long as dismissal does not precede service of process). Count VIII alleges that the SUP Application's denial and the Variance Application's denial violated 42 U.S.C. § 1983. (Compl. at pp. 12-13). The Supreme Court recently held that a party cannot use a 42 U.S.C. § 1983 action to enforce the limitations on a local zoning authority set forth in 47 U.S.C. § 332(c)(7). City of Rancho Palos Verdes, 544 U.S. at 127. Because the Supreme Court has held that a § 1983 action is not available in this situation, Count VIII does not state a claim upon which relief can be granted.

I.  **The Variance Application**

Plaintiff asserts that Defendant violated the TCA because its denial of the Variance Application was neither in writing nor supported by substantial evidence. Plaintiff reasons that Defendant denied its Variance Application by failing to act on it in a reasonable time and that this denial was completely unsupported. Defendant responds that Plaintiff prematurely raises these issues because it has not ruled on the Variance Application. The Court interprets Defendant's response as asserting that the case is unripe and that no unreasonable delay has occurred.

It is well-established that the existence of a case or controversy is a prerequisite for the exercise of federal judicial power under Article III. One important element of the "case" or "controversy" is satisfying the ripeness doctrine, which determines when a party may go to court. See Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n. 18 (1993) (noting that this doctrine derives from both Article III and prudential reasons). Essentially, ripeness is a question of timing. See Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 140 (1974). The doctrine's basic rationale is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967).

The circuits have differing approaches for determining when a TCA failure to act claim becomes ripe. The Seventh Circuit holds that the "specific ripeness requirements for cases challenging land use decisions" also apply to TCA cases. Sprint Spectrum, L.P. v. City of Carmel, 361 F.3d 998, 1002 (7th Cir. 2004) (discussing Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 191 (1985)(holding that failure to seek a variance meant that case was unripe)). The land use ripeness standard states that "zoning authorities must be given an opportunity to arrive at a final, definitive position regarding how it will apply the regulations at issue to the particular land in

question." Sprint Spectrum, 361 F.3d at 1002 (internal quotations omitted). In Sprint Spectrum, the Court found that although the zoning authority denied the initial request, it advised plaintiff to submit a plan and a special use permit application. 361 F.3d at 1004. Plaintiff then failed to pursue this "procedural route," meaning its claim was unripe because "until [plaintiff] is told definitely whether or not it is permitted to install an antenna and equipment shelter, it is mere speculation whether it even has an injury to complain of." Id. The Sixth and Third Circuits employ a similar, but less defined, test that essentially looks at whether plaintiff has filed an application. See Tennessee ex rel Wireless Income Properties v. City of Chattanooga, 403 F.3d 392, 397 (6th Cir. 2005) (holding case was ripe when plaintiff filed his application); cf. Kingston Township, 286 F.3d at 692 (holding case was unripe because plaintiff never filed an application); see also Nextel Partners of Upstate New York v. Town of Canaan, 62 F. Supp. 2d 691, 694 (N.D.N.Y. 1999) (holding lack of final decision does not make case unripe because to hold otherwise would contravene the TCA's "failure to act" provision).

Upon consideration, the Court need not choose between the differing approaches because Plaintiff satisfies both. Here, Plaintiff has filed the Variance Application, which unquestionably satisfies the Third and Sixth Circuits' test. Additionally, it satisfies the Seventh Circuit's test because the filing has given Defendant an opportunity to arrive at a final determination regarding the Property.

The Court now turns to the crux of Plaintiff's summary judgment motion, whether Defendant's failure to act on the Variance Application amounted to a failure to act within a reasonable time. This prohibition against unreasonable delay "is not absolute and no specific time period within which to pass on applications is prescribed; the limit is one of reasonableness under the circumstances." Omnipoint Communications Enters. v. Town of Amherst, 74 F. Supp. 2d 109, 121 (D.N.H. 1998), rev'd on other grounds, 173 F.3d 9 (1st Cir. 1999). Moreover, the TCA's legislative history states:

> [D]ecisions are to be rendered in a reasonable period of time, taking into account the nature and scope of each request. If a request for placement of a personal wireless service facility involves a zoning variance or a public hearing or comment process, the time period for rendering a decision will be the usual period under such circumstances. It is not the intent of this provision to give preferential treatment to the personal wireless service industry in the processing of requests, or to subject their request to anything but the generally applicable time frames for zoning decision.

H.R. Conf. Rep. No. 104-458, at 208 (1996).

Numerous cases have examined when a defendant fails to act within a reasonable time and some principles have emerged. First, there is no unreasonable delay when the local government makes "steady process in acting on the application." See New York SMSA Ltd. v. Town of Riverhead, 45 Fed. Appx. 24, 26-27 (2d Cir. 2002) (finding that one year time lapse between filing of application and preliminary decision was not an unreasonable delay because town had been conducting, among other things, an environmental analysis). Similarly, a lengthy process is acceptable so long as the process does not "transform an application into a self-perpetuating, endless odyssey." Town of Canaan, 62 F. Supp. 2d at 695 (finding that ten month decision making process did not result in defendant failing to act within a reasonable time); Masterpage Communications v. Town of Olive, 418 F. Supp. 2d 66, 77 (N.D.N.Y. 2005) (finding a failure to act occurred because the town held unnecessary hearings and required unnecessary procedures). Conversely, the refusal of a defendant to hear an application or take any action is a failure to act within a reasonable time. See Cincinnati Bell Wireless v. Brown County, No. 1:04-cv-773, 2005 WL 1629824, at * 4 (S.D. Ohio July 6, 2005); Masterpage Communications, 418 F. Supp. 2d at 77; Cox Communications PSC v. City of San Marcos, 204 F. Supp. 2d 1272, 1277-78 (S.D. Cal. 2002) (explaining, without determining, that not receiving a response for ten months could constitute an unreasonable delay). Evidence of the normal decision making process is probative, but not conclusive because the TCA requires the Court to take into account "the nature and scope" of the request. Town of Amherst, 74 F. Supp. 2d at 122.

Courts also look at whether the record indicates that the defendants actions "were improper in intent or effect." Id.; see Illinois RSA No. 3, Inc. v. County of Peoria, 963 F. Supp. 732, 746 (C.D. Ill. 1997) (holding even though the usual decision making process took three months, six month decision making process by defendant was not a failure to act with in a reasonable time because nothing suggested that defendant ignored plaintiff's application).

Upon consideration, Defendant's actions did not violate the TCA. As an initial matter, the Court is not willing to find that a four month delay is a per se failure to act in a reasonable time under the TCA. Additionally, Defendant could not act under the Variance Application under Missouri law because the Board only had three members. If the Board had granted Plaintiff a hearing with only three members, Plaintiff was automatically precluded from receiving a variance. As soon as the Board had four members, it scheduled a hearing, which shows an intent to decide the Variance Application quickly.[4] Finally, Plaintiff's claim of delay rings hollow when placed in the context of its actions, specifically its decision to seek a special use permit despite the Tower's clear violations of the City Code.

Plaintiff, however, believes that Defendant's explanation does not justify the delay for two reasons. First, Plaintiff suggests that Defendant's excuse is invalid because City Code §§ 25.21, .26 requires the Mayor and Council to appoint and approve five board members and three alternates. The Court disagrees with this assessment because if the Council could not find replacement board members, it is doubtful that they could find any Ferguson resident willing to serve as alternates. Additionally, Plaintiff has not presented evidence of an intent by Defendant purposely to delay deciding the Variance Application by not filling the Board positions. Secondly, Plaintiff believes that

---

[4]The Court can neither remand this case to the Board nor order the Board to make a decision because the TCA precludes courts from employing such methods. See Tennessee ex rel. Wireless Income Properties, LLC, 403 F.3d at 399-400.

Defendant's failure to notify it of the Board vacancies violated the TCA's in writing requirement. The Court disagrees because the in writing requirement only requires notification of a final action, not written notification of a minor delay. Applying Plaintiff's interpretation would place new burdens on local zoning boards not contemplated by the TCA. Thus, the Court finds that Defendant's actions regarding the Variance Application have not violated the TCA.

## II.     The SUP Application

Plaintiff asserts that Defendant's denial of its SUP Application was not supported by substantial evidence. Plaintiff's argument is based on the notion that the Court will find that the Board failed to act on the Variance Application in a reasonable time, meaning that the Court will order the Board to issue the variance. See New Par v. City of Saginaw, 301 F.3d 390, 399-400 (6th Cir. 2002) (collecting cases holding that the proper remedy for a TCA violation is to issue an injunction ordering the local government to grant the disputed application). Plaintiff reasons that once it has a variance, Defendant's denial of its SUP Application is not supported by substantial evidence.

As previously stated, the TCA requires a denial must be "in writing." 47 U.S.C. § 332(c)(7)(B)(iii). This Court has previously held that this language means that a writing must "(1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons." Sprint Spectrum, L.P. v. City of Dardenne Prairie, No. 4:06-CV-95 (JCH) (E.D. Mo. Sept. 19, 2006). Here, Defendant has satisfied this requirement because Resolution 2007-30 is separate from the record, explains why the SUP Application was denied, and has provided the Court with enough evidence to review the Council's decision.

§ 332(c)(7)(B)(iii) also requires that a denial must be supported by "substantial evidence." The Eighth Circuit explains that this phrase is an invocation of the usual standard of review for an agency action in federal court. See USCOC of Greater Iowa, Inc., 465 F.3d at 821. Thus, the burden is on the party seeking to overturn the zoning decision. Id. Substantial evidence review merely requires that the zoning authority's findings are " 'supported by some substantial level of evidence' (but less than a preponderance) on the record as a whole ('[c]ontrary evidence may not simply be ignored on review') so that a reasonable fact-finder could reach the same conclusion as did the Board, the Board's decision must be affirmed." Id. at 821-22 (citing Menendez-Donis v. Ashcroft, 360 F.3d 915, 919 (8th Cir. 2004)).

Upon consideration, Defendant's denial of the SUP Application is supported by substantial evidence. A reasonable fact-finder could reach the same conclusion as the Council did. Specifically, the Council noted that multiple aspects of Plaintiff's plan violated the City Code, most notably the setback requirements. The Council also referenced the Commission's recommendation, which noted that the Tower did not fit in with the other buildings in the neighborhood. These reasons provide substantial evidence that the SUP Application was properly denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. No. 5) is **DENIED**.

**IT IS FURTHER ORDERED** that Count VIII of Plaintiff's Complaint is **DISMISSED**.

Dated this 29th day of November, 2007.

/s/ Jean C. Hamilton  
UNITED STATES DISTRICT JUDGE