UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| USCOC OF GREATER MISSOURI, LLC, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV01489 JCH |
| | ) | |
| CITY OF FERGUSON, MISSOURI, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon Plaintiff's and Defendant's Cross-Motions for Summary Judgment on Plaintiff's First Amended Complaint. (Doc. Nos. 64, 69). This matter has been fully briefed and is ready for disposition.

## BACKGROUND[1]

On August 21, 2007, Plaintiff filed a nine count Complaint against Defendant. (Doc. No. 1). Plaintiff filed a First Amended Complaint on March 7, 2008. (Doc. No. 41). This Court dismissed Counts IV-IX of the First Amended Complaint in its Order, dated May 14, 2008. (Doc. No. 49).[2] Defendant filed its Motion for Summary Judgment on Counts I, II and III of Plaintiff's First Amended Complaint on September 19, 2008. (Doc. No. 64). Count I alleges a violation of 47 U.S.C. §332(c)(7)(B)(iii) (denial not in writing or supported by substantial evidence). Count II alleges a

---

[1] For a more detailed recitation of the background facts refer to this Court's November 29, 2007 Order (Doc. No. 31) and May 14, 2008 Order (Doc. No. 49). See also USCOC of Greater Mo. v. City of Ferguson, Case No. 4:07-CV-1489, 2008 U.S. Dist. LEXIS 39026, *1-9 (E.D. Mo. May 14, 2008).

[2] Counts IV - VIII were dismissed, with prejudice. Count IX was dismissed but Plaintiff was given an opportunity to file an amended complaint to correct the deficiencies in Count IX, which Plaintiff did not do.

violation of 47 U.S.C. §332(c)(7)(B)(i)(I) (unreasonable discrimination). Count III alleges a violation of 47 U.S.C. §332(c)(7)(B)(i)(II) (prohibiting wireless service) (Doc. No. 41). On September 25, 2008, Plaintiff filed its Cross-Motion for Partial Summary Judgment as to Count I of Plaintiff's First Amended Complaint. (Doc. No. 69). On September 30, 2008, this Court granted Plaintiff's stipulation of dismissal of Count II of the Complaint. (Doc. No. 72). The parties have filed responses and replies to each other's summary judgment motions and they are ready for disposition.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex

Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

## STANDARD FOR INJUNCTIVE RELIEF

A moving party must show actual success on the merits for the court to issue a permanent injunction. Oglala Sioux Tribe v. C & W Enters., 542 F.3d 224, 229 (8th Cir. 2008). "If a court finds actual success on the merits, it then considers the following factors in deciding whether to grant a permanent injunction: (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest." Id. (citing Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds, 530 F.3d 724, 729, n.3 (8th Cir. 2008); Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981)).

## DISCUSSION

### I. BACKGROUND OF THE TCA

The Telecommunications Act of 1996 ("TCA") was intended by Congress to foster competition among telecommunications providers, to improve the quality of their services, and to encourage the rollout of new technologies. USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment, 465 F.3d 817, 820 (8th Cir. 2006) (citing City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 115 (2005)). "One of the means by which [Congress] sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." Id.

In the TCA, "Congress specifically preserved the authority of local zoning boards 'over decisions regarding the placement, construction, and modification of personal wireless service facilities,' subject to some limitations." USCOC of Greater Iowa, Inc., 465 F.3d at 820 (citing 47

U.S.C. § 332(c)(7)(A)). One of the limitations imposed on local zoning boards is that a board's decision denying permission to construct a cellular tower must be in writing and supported by substantial evidence contained in a written record. Id. (citing § 332(c)(7)(B)(iii)). "The TCA contains no substantive law or guidance on granting or denying permits for cellular towers and does nothing to erode the power of local authorities to enforce traditional zoning concerns." USCOC of Greater Iowa, Inc., 465 F.3d at 822. "Congress's omission from the TCA of substantive standards for cellular-tower siting further demonstrates that Congress intended, notwithstanding the high degree of federal regulation in the area of wireless communication, to allow local zoning boards to continue to do what local zoning boards traditionally do best: make reasoned decisions regarding the appropriate use of privately-owned property for the public good." Id.[3]

## II. Defendant is Entitled to Summary Judgment on Count I

Both parties have filed cross motions for Summary Judgment on Count I. As noted by Defendant, this Court has already determined that denial of the special use permit ("SUP") application was proper. In the Court's May 14, 2008 Order, this Court held that "the lack of a variance was a proper reason under the 'substantial evidence' standard for denying the SUP Application." Doc. No. 49, p. 17. The only remaining issue for the Court to determine is whether the denial of the Variance Application was supported by substantial evidence. See Doc. No. 49, n. 3. Therefore, this Court's review of the cross-motions for summary judgment on Count I is limited to whether denial of the Variance Application was in writing and supported by substantial evidence.

### A. Was the Denial of the Variance Application "In Writing"?

---

[3]The TCA affords federal courts jurisdiction to review orders denying construction of cellular towers. Id. (citing § 332(c)(7)(B)(v)).

Initially, Plaintiff, as it has done on previous occasions, argues that Defendant's decision was not "in writing" as required under the TCA. (Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), Doc. No. 67, p. 6) (claiming defendant "failed to maintain the testimony and evidence as required by the TCA and Section 89.080 RSMo."). The TCA requires that any decision denying permission to construct a tower "shall be in writing and supported by substantial evidence contained in the written record." 47 U.S.C. § 332(c)(7)(B)(iii). As noted in this Court's opinion in USCOC of Greater Missouri, LLC v. County of Franklin, Missouri, No. 4:07cv1426, 2008 U.S. Dist. LEXIS 39461 (E.D. Mo. May 15, 2008), the Eighth Circuit has adopted a "lenient approach" with respect to the writing requirement under the TCA. Id. at *13-14. "The TCA requires only that the Board's final decision be in writing and supported by substantial evidence **in a written record**, not that every necessary finding be in the written decision." Id. at *14 (citing USCOC of Greater Iowa, 465 F.3d at 824) (emphasis in original). Further, this Court has already determined that the Board's decision satisfies the TCA's "in writing" requirement because the decision was "separate from the record, describes the reasons for denying the Variance Application, and sufficiently explains the reasons for the denial so that this Court can review it." See May 14, 2008 Order, Doc. No. 49, p. 17. Thus, the denial of the Variance Application was in writing and complied with the TCA and local regulation. See Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment As To Counts I, II and III of Plaintiff's First Amended Complaint ("Defendant's Reply"), Doc. No. 77, p. 2.[4]

---

[4] Plaintiff cites to Board of Zoning Adjustment of Kansas City v. Mayfair Homes Assoc., Inc., 634 S.W. 246 (Mo. Ct. App. 1982) for the proposition that the reviewing court must have a transcript of the proceedings before the board of zoning adjustment. ( Plaintiff's Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment, Doc. No. 70, p. 5). That case, however, was not a case under the TCA.

### B. Was the Board's Denial of the Variance Application Supported by Substantial Evidence?

#### 1. Substantial evidence standard

Initially, the burden is on the party seeking to overturn the Board's decision--the USCOC--to show that the decision is not supported by substantial evidence. USCOC of Greater Iowa, 465 F.3d at 821 (citing cases); Voicestream Minneapolis, Inc. v. St. Croix County, 342 F.3d 818, 830 (7th Cir. 2003) ("The party seeking to overturn the local zoning board's decision has the burden of proving the decision is not supported by substantial evidence."). Under the substantial evidence standard, the Court cannot substitute its judgment for that of the administrative fact-finder just because the Court believes that the fact-finder is clearly wrong. USCOC of Greater Iowa, 465 F.3d at 821. "If the Board's findings are 'supported by some substantial level of evidence' (but less than a preponderance) on the record as a whole ('[c]ontrary evidence may not simply be ignored on review') so that a reasonable fact-finder could reach the same conclusion as did the Board, the Board's decision must be affirmed." Id. at 821-22 (citations omitted). "Substantial evidence review under the TCA does not create a substantive federal limitation upon local and land use regulatory power." Voicestream Minneapolis, Inc., 342 F.3d at 830 (citation omitted). Instead, "the TCA's substantial evidence test is a procedural safeguard which is centrally directed at whether the local zoning authority's decision is consistent with the applicable local zoning requirements." Id. (citations omitted). "The substantial evidence test is highly deferential to the local board." Id. (citing Second Generation Props., L.P. v. Town of Pelham, 313 F.3d 620, 627 (1st Cir. 2002). The Court "will not reject the Board's decision as unsupported by substantial evidence because there exists 'the possibility of drawing two inconsistent conclusions from the evidence.'" USCOC of Greater Iowa, 465 F.3d at 822 (citing Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)).

#### 2. The Board's Decision was Supported by Substantial Evidence

a. Standard of Review.

Under Missouri zoning law, there are use and area variances. Matthew v. Smith, 707 S.W.2d 411, 413 (Mo. 1986) (discussing the differences between use and area variances). A use variance permits a use that the zoning ordinance does not allow. Long v. Board of Adjustment, 856 S.W.2d 390, 391 (Mo. Ct. App. 1993). A board may grant a use variance only to alleviate an unnecessary hardship. Id. (citing Matthew, 707 S.W.2d at 413-14). In contrast, "[a]rea variances have 'no relationship to a change in use;' rather they are grants to erect, alter, or use a structure for a permitted use in a way that violates the zoning code." Sprint Spectrum, L.P. v. City of Dardenne Prairie, No. 4:06CV-00095, 2006 U.S. Dist. LEXIS 67006, *19 (E.D. Mo. Sept. 19, 2006) (citing 101A C.J.S. Planning & Zoning § 297). "Area variances usually involve setbacks, frontage requirements, and yard requirements." Id. An applicant for an area variance "must establish, *inter alia*, practical difficulties, which are the existence of conditions *slightly* less rigorous than unnecessary hardships." Baumer v. City of Jennings, 247 S.W.3d 105, 113 (Mo. Ct. App. 2008) (emphasis in original).

In its Response to Defendant's Motion for Summary Judgment, Plaintiff argues that the Board applied the incorrect test for a variance. (Doc. No. 67, pp. 2-3). Plaintiff claims that the variance requested was an "area" variance but it was incorrectly reviewed as if it were a "use" variance. Id. Plaintiff argues that a communications tower is listed as one of the "special uses" permitted under the local ordinance. See Plaintiff's Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment, Doc. No. 70, p. 10 (citing Exhibit 18, Doc. No. 69-21, Section 13.4.I). Plaintiff also notes that the Board specifically referred to an "area variance" in its February 4, 2008 decision. (Exhibit 13, Doc. No. 69-14, paragraph 4). In turn, Defendant claims that the Board properly treated Plaintiff's application as a request for a "use" variance because a telecommunications tower is not listed as one of the permitted uses allowed in a C-1 District under the applicable city ordinance. See

Defendant's Reply, Doc. No. 77, pp. 4-5 (citing Plaintiff's Exhibit 18, Doc. No. 69-21); Defendant's Response in Opposition to Plaintiff's Cross-Motion for Summary Judgment as to Count I of Plaintiff's First Amended Complaint ("Defendant's Response"), Doc. No. 80, p. 6. Defendant claims Plaintiff sought to build a tower when one was specifically prohibited by Zoning Ordinance 13.0. See in Defendant's Response, Doc. No. 80, p. 6.

There appears to be a factual dispute as to whether Plaintiff sought an area or use variance. This dispute, however, is not determinative of the motions for summary judgment because the evidence before the Board supported the denial of the variance application under either the relaxed "practical difficulties" or the "unnecessary hardship" test.

> b. The evidence presented to the Board supported a denial of the variance application under either the "practical difficulties" or "unnecessary hardship" tests.

Plaintiff proposed installing a 105-foot wireless communication tower on land located at 914 Airport Road in the City of Ferguson, Missouri. "Section 23.7 of the City of Ferguson's City Code required that telecommunications towers meet certain criteria including the following: (1) A communication tower shall not exceed 150 feet in height, (2) The communication tower shall be set back from the property line a minimum of (1) foot for every foot of structure height. No communication tower shall be located within 200 feet of any residential structure ... and (4) Prior to the approval of a communication tower by the City Council, the applicant shall document its efforts to locate the proposed antenna on an existing communication tower within the city or in close proximity to the City. Such documentation shall also indicate why co-location on any existing tower is not feasible." (Defendant's Memorandum of Law in Support of Motion for Summary Judgment as to Counts I, II, and III of Plaintiff's First Amended Complaint ("Defendant's Memorandum in Support"), Doc. No. 65, p. 10). Both parties admit that the communications tower did not meet the

minimum set back requirements and that the proposed tower would have been less than 200 feet from the closest residence. (Defendant's Memorandum in Support, Doc. No. 65, pp. 5-6; Plaintiff's Cross-Motion for Summary Judgment as to Count I of Plaintiff's First Amended Complaint, Doc. No. 69, ¶ 11; see also Exhibit 13, Doc. No. 69-14, ¶ 4).

As noted above, the parties dispute whether the applicant requested an "area" or "use" variance." Plaintiff repeatedly claims that the Board utilized only the "unnecessary hardship," rather than the "practical difficulty" standard in making its decision. See Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Plaintiff's Reply"), Doc. No. 83, p. 5. The evidence, however, demonstrates that the application would have failed under either standard.

The Board's Findings of Fact belie Plaintiff's claim that the Board only reviewed the application under the "unnecessary hardship" standard. In its findings, the Board stated several times that the application was reviewed under both the unnecessary hardship and practical difficulties tests:

> 4. The Applicant seeks an area variance to all four setback requirements between a proposed tower and the property boundaries such that the tower will be 31 feet from the property boundary to the north, 23 feet from the property boundary to the east, 68 feet from the property boundary to the south and 100 feet from the property boundary to the west.
>
> The Applicant also seeks a variance to the 200-foot setback requirement between a proposed tower and any residential structure such [that] the tower will be only 118 feet from one nearby residential structure on an adjoining parcel and, possibly, within 200 feet of other nearby residential structures.
>
> 5. There are no unique characteristics of this property which create an unnecessary hardship or *practical difficulties* to the owner or the Applicant.
>
> 6. Strict adherence to the requirements of the code will not create an unnecessary hardship or *practical difficulties* due to the configuration or size of the lot or topography or other land conditions, to wit:
>
>> The property is a 19,000 square foot lot fronting on Airport Road. It meets the minimum lot size required for the C-1 zoning district. The property is flat, is of normal shape and has no topographic characteristics or dimensions that are unique

from other properties in the C-1 zoning category. The petitioner agrees in their BOA application with this assessment that the property is a "flat asphalt surface" and that there are no unique physical characteristics. The property can easily be utilized for uses which are permitted in the C-1 zoning category. There are not *practical difficulties* caused by the physical conditions of the land which prevent the use of the property in accordance with the C-1 zoning regulations.

       7.      Because of the proximity of the proposed tower to Airport Road, overhead utility lines servicing the area and adjacent residential properties and because of the height of the proposed tower and the extent of the variances requested, the proposed variance will adversely affect adjacent property owners or residents and the public health, safety, order, convenience, and general welfare of the community.

       8.      Granting the variance will violate the general spirit and intent of the Zoning Ordinance.

(Doc. No. 69-14) (emphasis added).

In its Memorandum in Opposition, Plaintiff claims that "Defendant's Memorandum of Law ... in support of its Motion states that Plaintiff's Variance Application was reviewed under the stricter standard of 'unnecessary hardship [rather than practical difficulty].'" (Plaintiff's Memorandum in Opposition, Doc. No. 67, p. 2) (citing Defendant's Memorandum, Doc. 65, pp. 13-14). However, in Defendant's Memorandum in Support, it specifically states "the Board specifically found there were no *practical difficulties* or unnecessary hardships." (Defendant's Memorandum in Support, p. 14) (emphasis added). Likewise, in the staff report provided to the Board of Adjustment Meeting in Ferguson City Hall on February 4, 2008, Mr. Terry O'Neil, Director of Public Works, stated that the "staff recommended denial of the request for a variance due to the fact that there is no proof of a *practical difficulty* caused by a physical condition of the particular property." (Exhibit 20 to Plaintiff's Cross-Motion, Doc. No. 69-23, p. 2) (emphasis added). The undisputed evidence demonstrates that the Board utilized the "practical difficulty" standard.

Further, under the practical difficulties standard, the substantial evidence supported denial of Plaintiff's Variance Application. Plaintiff states that "the only standard contained in Defendant's Zoning Code related to a practical difficulty analysis is discussed in Section 25.44 of Defendant's

- 10 -

Zoning Code, which contains several general standards for granting a variance." (Plaintiff's Reply, Doc. No. 83, p. 5). "Section 25.44 states in part that the Board shall determine 'that the proposed change will not ... increase congestion in public streets, or increase the danger of fire or materially diminish or impair established property values within the surrounding area, or in any other respect impair the public health, safety, comfort, morals and welfare of the City of Ferguson.'" (Plaintiff's Reply, Doc. No. 83, pp. 5-6). It is undisputed that the Board determined that the proposed variance would "adversely affect adjacent property owners or residents and the public health, safety, order, convenience, and general welfare of the community." (Exhibit 13 to Plaintiff's Cross-Motion, Doc. No. 69-14, p. 2).[5] Under the criteria identified by Plaintiff for a showing of practical difficulty, the Board evaluated the evidence under the practical difficulties standard and determined there was substantial evidence to deny the Variance Application.

Thus, the Board determined that, under either "practical difficulties" or the "unnecessary hardship" test, Plaintiff did not satisfy its burden of proof that their Variance Application was supported by substantial evidence, and summary judgment is granted in favor of Defendant on Count I.

### III.    Defendant is Entitled to Summary Judgment on Count III

---

[5] See also Planning and Development Memorandum #2007, Exhibit 4 to Plaintiff's Cross-Motion, Doc. No. 69-5 ("Based on the fact that the surrounding properties are all one story and the tower will be 105 feet tall, it will not be similar with the surrounding buildings. Disguising the tower as a flag pole will not change the fact that it will create a visual problem in the neighborhood. The location of the equipment shelters will be located at the front yard setback line of the property, but any additional equipment for shared users of the tower will be very visible within the front yard and very close to Airport Road."). In contrast, in the Plaintiff's Appeal to the Board of Adjustment for an Area Variance, Plaintiff provided only the following perfunctory and conclusory finding, "There would not be any impact on the surrounding residents. The surrounding commercial properties would not be affected." (Exhibit 6 to Plaintiff's Cross-Motion, Doc. No. 69-7, p. 3).

Plaintiff argues, notwithstanding the Court's conclusions on the "substantial evidence" issues, that the Board's decision effectively prohibits the provision of personal wireless services, 47 U.S.C. § 332(c)(7)(B)(i)(II), and therefore must be enjoined. "The TCA provides that, in regulating the placement and construction of personal wireless facilities, a state or local government, 'shall not prohibit or have the effect of prohibiting the provision of personal wireless services.'" Voicestream Minneapolis, Inc., 342 F.3d at 833 (quoting 47 U.S.C. §332(c)(7)(B)(i)(II)). In its Complaint, Plaintiff alleges that Defendant's denials of Plaintiff's SUP and Variance Application prohibit or have the effect of prohibiting the provision of personal wireless services pursuant to 47 U.S.C. §332(c)(7)(B)(i)(II)." (Amended Complaint, Doc. No. 41, ¶ 28). Plaintiff further alleges that "Defendant is not administering its zoning authority in accordance with Defendant's Zoning Code or the TCA, which will have the result that all possible sites in a given area will be rejected." (Id. at ¶ 29).

As noted previously by this Court, the Eighth Circuit has not discussed the anti-prohibition provision, but other circuit courts have offered conflicting interpretations of it. USCOC of Greater Mo., LLC v. City of Ferguson, No. 4:07-CV-01489, 2008 U.S. Dist. LEXIS 60171, *4-5 (E.D. Mo. Aug. 5, 2008) (citing MetroPCS, Inc. v. City & County of San Francisco, 400 F.3d 715, 730-35 (9th Cir. 2005); USCOC of Va. RSA # 3 v. Montgomery County Bd. of Supervisors, 343 F.3d 262, 268 (4th Cir. 2003); VoiceStream Minneapolis, Inc., 342 F.3d at 833-34)). This Court applies the test adopted by several circuits and outlined in USCOC of Greater Iowa, Inc. v. City of Omaha, No. 4:06CV3104, 2006 U.S. Dist. LEXIS 66428 (D. Neb. Sept. 14, 2006): "to prove there has been an effective prohibition of service, the provider must demonstrate: (1) a gap in coverage exists; and (2) the provider has explored all reasonable alternatives that may be a less intrusive way to fill the gap."

Id. at *22-23 (citing MetroPCS, Inc., 400 F.3d at 731). The undisputed evidence, however, does not support a finding that Defendant has prohibited personal wireless services.

### A. Is There a Gap in Service Providers?

To establish a violation of the TCA's anti-prohibition clause, "the service provider must first show that its proposed facility will close a 'significant gap' in coverage." Voicestream Minneapolis, Inc., 342 F.3d at 835, n. 7 (citations omitted). Plaintiff claims that a gap in services is demonstrated by the two maps that were presented to the Board. See Plaintiff's Reply, Doc. No. 83, p. 7; Exhibits 14 and 15 to Plaintiff's Cross-Motion, Doc. Nos. 69-15 and 69-16.[6] The Board, however, did not make any findings regarding whether there was a "significant gap" in coverage. See Exhibit 13 to Plaintiff's Cross-Motion, Doc. No. 69-14. The Court assumes there is a disputed fact regarding whether there was a significant gap in services in this area. Nevertheless, even if the Court found that there was a "significant gap" in services, Plaintiff has not demonstrated that the proposed communication tower would be the least intrusive means to remove the gap in service providers. See USCOC of Greater Iowa, 465 F.3d 817[7]

---

[6] Plaintiff also cites to Exhibit 20 (Doc. No. 69-23) to support this point, but this document does not provide any information regarding the supposed gap in coverage. Further, the Court notes that Exhibit 15 (Existing network coverage with Airport Road site) appears to demonstrate that there is more network coverage than Exhibit 14 (Existing network coverage without Airport Road site), but it is difficult to discern the extent of the purported gap. The Court would benefit from further explanation, which the parties did not provide, to determine whether there is a "significant gap."

[7] Similarly, in USCOC of Greater Iowa, the plaintiff argued that the denial of a conditional use permit effectively prohibited the provision of personal wireless services. Id. at 824. In that case, the Eighth Circuit noted that the proposed site was already "surrounded by USCOC's existing communication facilities" Id. at 825. USCOC sought to improve the dropped-call rate within a certain area. Id. The Court noted that "USCOC is presently able to provide service within the area in question, just not the quality of service it would like." Id. Further, the Eighth Circuit held that the USCOC "did not adequately investigate all feasible alternative sites." Id. The Court held that under the circumstances, the USCOC could not show that the Board's denial of the requested conditional use permit resulted in the prohibition of personal wireless services.

### B. If there is a gap in service providers, did Plaintiff choose the least intrusive means to remove the gap in service providers?

The provider must show "that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve." APT Pittsburgh Ltd. P'ship v. Penn Township Butler County, 196 F.3d 469, 480 (3d Cir. 1999). To make such a showing, the provider must demonstrate that "a good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc." Voicestream Minneapolis, Inc., 342 F.3d at 835, n. 8 (citing APT Pittsburgh Ltd. P'ship, 196 F.3d at 480).

Here, a showing of "less intrusiveness" has not been made. Plaintiff claims that it "clearly documented that it was unable to construct the communication tower without the approval of the requested variances, and that due to the size and shape of the Property, there was no place on the Property where Plaintiff could construct its Tower without needing variances." (Plaintiff's Reply, Doc. No. 83, p. 6). Specifically, at the hearing before the Board of Adjustment, Mr. William Jenkins,[8] with CIS Communications, "explained the need for a cell tower in this location and stated all the parcels were too small to support a tower and were near residential structures and there were no other properties to meet U.S. Cellular specifications." (Exhibit 20 to Plaintiff's Cross-Motion, Doc. No. 69-23, p. 2). In its Response to Defendant's Motion for Summary Judgment, Plaintiff further argues that its representatives "discussed at the hearing the problem that all of the alternative sites they examined would also require variances of the setback requirements. Plaintiff's representatives testified that they looked at commercial-use areas in the hopes of minimizing objections from

---

[8] Mr. Jenkins is erroneously referred to in the Board of Adjustment Meeting Minutes as Mr. Williams.

residents, but most of the other commercial lots in the area of Plaintiff's service gap are smaller and would also require setback variances."  (Plaintiff's Response, Doc. No. 67, p. 6).

However, the undisputed evidence before the Court does not support Plaintiff's claim that they investigated several other locations for the proposed tower. Rather, in the Plaintiff's Variance Application, Plaintiff made the conclusory statement that "Their [sic] are no other locations on this property that would allow USCOC to meet the required setbacks.  Their [sic] are not any other properties in the area that would allow USCOC the opportunity to meet these setbacks." Exhibit 6 to Plaintiff's Cross-Motion, Doc. No. 69-7, p. 3.  Defendant did not provide any evidentiary support for its claim that there were no other locations that would meet the required setbacks.  The City of Ferguson's Planning and Zoning Commission noted, when it considered the Special Use Permit application and recommended that the Ferguson City Council deny the application, that Plaintiff neither suggested any alternative sites nor explained by other locations would not work.  See Defendant's Memorandum in Support, Doc. No. 65, p. 5; Exhibit 4 to Plaintiff's Cross-Motion, Doc. No. 69-5 ("No names or addresses have been given of towers where they have tried to co-locate.  Co-location on the other sites had been suggested to the applicant and no explanation has been provided why these locations will not work for their service needs."); see also USCOC of Greater Iowa, Inc., 465 F.3d at 825 (The Court "will assume only for this opinion the dubious proposition that a zoning board's refusal to grant a permit for a cellular tower, with the result that a single provider's wireless service in a relatively small area is less than optimal, may be a 'prohibition' on the provision of personal wireless services for purposes of the TCA. Even with that being the case, the record shows that USCOC did not adequately investigate all feasible alternative sites, pursuing only one other site with any vigor.").  In addition, Plaintiff made no statements that co-location was not feasible or that it had even pursued that option.  Absent this information, Plaintiff has not met its

burden to demonstrate that approving the Variance Application would be the least intrusive means to close the purported significant coverage gap. Plaintiff cannot show that the Board's denial of the requested conditional use permit results in the prohibition of the provision of personal wireless services and Defendant's Motion for Summary Judgment on Count III is granted.[9]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on Counts I and III (Doc. No. 64) is **GRANTED**, Plaintiff's Cross-Motion for Summary Judgment on Count I is <u>DENIED</u> (Doc. No. 69), and Plaintiff's claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

---

[9] Plaintiff provided the affidavit of its attorney during the application process, Michael C. Seamands. (Exhibit 1 to Plaintiff's Cross-Motion, Doc. No. 69-2). Mr. Seamands provided general information regarding the SUP and Variance Application but did not provide any information about how his client chose the location, other locations considered, or why such other locations were inadequate. (<u>Id</u>.) In comparison, the plaintiff in <u>USCOC of Greater Iowa, Inc. v. City of Omaha</u>, No. 4:06CV3104, 2006 U.S. Dist. LEXIS 66428 (D. Neb. Sept. 14, 2006) submitted the affidavit of Patrick Armstrong, a radio frequency engineer, who examined alternative sites. <u>Id</u>. at *17. Mr. Armstrong attested that USCOC considered USCOC's five existing sites, ten alternative collocation sites and 105 two-site combinations. <u>Id</u>. Mr. Armstrong's affidavit stated that none of the 105 two-site alternatives would provide the coverage USCOC needed due to height, location, obstruction, and/or interference issues. <u>Id</u>. The Nebraska District Court held that the city violated the TCA and issued injunctive relief to USCOC. <u>Id</u>. at *24.

**IT IS HEREBY FURTHER ORDERED** that the parties Joint Motion to Continue the Trial Setting (Doc. No. 84) is **DENIED** as moot.



Dated this 6th day of November, 2008.


/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE